THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* RAFAEL ANGEL BARRETO, Defendant and Appellant.

No. Cr–62–255.   Decided February 27, 1963.

---

*Luis Raúl Cruz Jiménez* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Irene Curbelo, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

An information of burglary in the first degree was filed against appellant Rafael Angel Barreto and another codefendant named Luis Armando Serrano, charging them with entering a commercial establishment at nighttime, and committing theft or pilferage, taking from said establishment several cartons of cigarettes, quarts of "Palo Viejo" rum and other goods. After a trial, the court found them guilty of the crime charged and sentenced them to serve from 3 to 6 years' imprisonment in the penitentiary.

The evidence for the People was brief; it only covers 16 pages of the record. The owner of the establishment testified that on March 12, 1960 he closed the establishment

about 7 or 8 o'clock in the evening, and next day he found a broken door. There was missing all the "Palo Viejo" rum, the cigarettes, two knives and eight silver dollars, plus several lottery tickets. After that date he was robbed twice again. The "Palo Viejo" rum bottles were a quart each. Another witness testified that on March 23 about 5 o'clock in the afternoon he was having some drinks with another person and appellant arrived there with a quart of "Palo Viejo" rum; he offered to sell it for $1.50, and the witness bought it. On cross-examination it appeared that at the above-mentioned moment the witness had been drinking liquor for over one hour and that he was under psychiatric treatment. Detective Alejo Morales Pagán stated that he cooperated in the investigation of the burglary; that the other codefendant, Luis Armando Serrano, had first stated that they had both entered, and later denied it; that he had testified before the judge because he had been forced to do so.

The justice of the peace testified that on March 23, they took Serrano before him and he voluntarily testified in his presence.[1] The testimony reads as follows:

"That on Monday 21 of the present month of March while standing next to Heriberto Barrios' grocery store between the shops of Iterio and Faviciano, Rafael Barreto came to me and told me that he had to get money by any means, to go to a dance, then he disappeared from my side and slipped between the theater and Heriberto Barrios' shop, and shortly thereafter came out with a quart of "Palo Viejo" rum in a paper bag and four packs of Chesterfields in his pockets, then Iterio and Moncho Menas arrived and he offered to sell them the quart of rum which they bought for one dollar and drank it right there.

Q. Do you know anything about several lottery tickets stolen from Heriberto Barrios?

---

[1] Codefendant Serrano testified in court challenging the voluntariness of his confession. For present purposes it is unnecessary to pass on this incident, although it appears from his testimony that a policeman struck him when he refused to state that appellant had given him three packs of cigarettes.

A. Yes, sir, I know that Rafael went to Manatí to change some lottery tickets.

Q. How many times has Heriberto Barrios been robbed?

A. Three times.

Q. When was the first time he was robbed?

A. The first time, I don't remember when it was.

Q. And the second time, when was it?

A. The second time, was last Sunday, the sixteenth, about twelve or twelve thirty, at midnight.

Q. With what did they open the door on the sixteenth?

A. I don't know where it was opened.

Q. Who went in first, you or he?

A. Well, I didn't go in, I was waiting downstairs.

Q. And what did he take out from the store that day?

A. He took out cigarettes, rum, and an 8" knife with a black handle and some silver dollars, (about 4 more or less).

Q. What was your share in the booty?

A. Well, I only participated in the cigarettes.

Q. Do you wish to add anything else?

A. No sir, that is all."

When the foregoing testimony was presented in evidence, the following took place:

"Mr. Cordero: I move not to consider and eliminate from the confession everything that Luis Armando Serrano has testified connecting the other codefendant.

"Hon. Judge: Overruled.

"Mr. Cordero: I take exception.

"Hon. Judge: The court ratifies its previous ruling refusing to strike out the testimony of this young man.

"Mr. Cordero: Our contention is that the whole testimony, everything which connects the other codefendant with what Luis Armando Serrano has confessed, should be stricken out.

"Hon. Judge: Overruled.

"Mr. Cordero: Exception."

In *People* v. *Casanova*, 77 P.R.R. 690, 696, upon reversing a judgment of conviction we said: "When there is presented in evidence a confession where the declarant, besides incriminating himself, incriminates other persons, the judge must instruct the jury specially that such a confession can be used

against the declarant with respect to his guilt exclusively, but cannot be used to determine the guilt of other persons also incriminated by the declarant. The failure to give such an instruction is prejudicial error against the others incriminated by the declarant and must result in reversal of the judgment."

■■■ In this case there was no jury, so no instruction was necessary. But the principle sanctioned in the case of Casanova is that the extrajudicial testimony of a codefendant incriminating another is not legally competent nor admissible evidence against the latter to determine his guilt, whether the trial is by a jury or by the court. *Cf. Reyes* v. *Superior Court*, 84 P.R.R. 27 (1961); *People* v. *Cruz, ante*, p. 124. Rather than an evidence problem of admissibility of proof, it is a fundamental question of a fair trial, or what is the same, a problem of due process of law. Neither is this a case of acts or extra-judicial declaration of a coconspirator admissible in evidence against another coconspirator under certain circumstances. *Cf. People* v. *Castro*, 75 P.R.R. 630, 639.

■■ Irrespective of the procedural error of refusing to strike from the record the evidence respecting the codefendant-appellant, there is no doubt that the trial court took it into consideration in determining his guilt. There is no other explanation for defendant's conviction of this crime. Eliminating the elements of guilt which arise from Serrano's confession, all the evidence introduced against appellant was the bare fact that ten days after the alleged burglary he sold a one-quart bottle of "Palo Viejo" rum. Allowing this evidence the full degree of credibility which we assume the trial court gave it, the same is insufficient at law to sustain the conviction. Burglary is one of those singular crimes which requires a specific intent to be proved as a matter of fact. *Cf. People* v. *Rodríguez*, 84 P.R.R. 287 (1961).

■ Even though circumstantial evidence may serve as a basis for a conviction without its having to be compatible with the idea of innocence alone, it should contain the ingredients which persuasively tend to establish the commission of the crime. In our opinion, the evidence in the case at bar does not meet this standard, which is the standard of conviction beyond any reasonable doubt, in the light of the guarantee, herein constitutional, to enjoy the presumption of innocence.

Since no legally competent evidence exists for the judgment of conviction rendered by the trial court in this prosecution by a court, the same will be reversed and appellant acquitted.